IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSALIND SMITH and RASHAI JACKSON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 5340 |
| AFS ACCEPTANCE, LLC, EQUITABLE SERVICES, INC., and UNKNOWN REPOSSESSION AGENTS, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rosalind Smith and Rashai Jackson sued defendants AFS Acceptance, LLC ("AFS") and Equitable Services, Inc. ("Equitable") for various statutory and common law claims arising out an incident that occurred on August 16, 2010. Plaintiff Rosalind Smith obtained an auto loan from AFS to purchase a vehicle. When Smith defaulted on her loan, AFS hired Equitable to repossess the vehicle. While Equitable was in the process of hooking the vehicle up to tow it away, Smith's daughter, Rashai Jackson, jumped into the vehicle and then Smith also jumped into the vehicle. The police arrived on the scene while the repossession was in progress and the two women were in the vehicle. The officers stopped the repossession and told Equitable to leave the vehicle in the driveway. AFS has moved to dismiss the claims against it: (1) violation of Article 9, § 609(b)(2) of Illinois'

Uniform Commercial Code ("Repossession Statute") (Count II); (2) negligence (Count III); and (3) willful and wanton behavior (Count IV). In addition, Equitable has moved to dismiss all five claims against it: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (Count I); (2) violation of 810 ILCS 5/9-609(b)(2) (Count II); (3) negligence (Count V); (4) willful and wanton behavior (Count VI); and intentional infliction of emotional distress (Count VII). For all the following reasons, both motions are denied in part and granted in part.

**AFS's Motion to Dismiss**

AFS argues that I should dismiss Count II, which alleges a violation of the Repossession Statute, because plaintiffs failed to allege facts establishing an agency relationship between AFS and Equitable. Plaintiffs respond that, regardless of the relationship between AFS and Equitable, AFS is liable for the actions taken on its behalf.

Under the Repossession Statute, a secured party, after default, has the right to take possession of the collateral without judicial process so long as the secured party "proceeds without breach of the peace." 810 ILCS 5/9-609(b)(2). Comment 3 to the Repossession Statute states, "In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, *including independent contractors*

2

engaged by the secured party to take possession of collateral." 810 ILCS 5/9-609, Comment 3 (emphasis added). According to Comment 3, a secured party may be liable for the actions of another, even if no agency relationship exists. Here, plaintiffs allege that AFS loaned money to Smith for the purchase of the vehicle. Plaintiffs also allege that Equitable acted on AFS's behalf. Thus, plaintiffs' allegations are sufficient to claim that AFS, as a secured party, may be liable under the Repossession Statute for the actions of Equitable. *See Thompson v. Gateway Financial Services, Inc.*, No. 10 CV 7658, 2011 WL 1429207, at *2 (N.D. Ill. Apr. 14, 2011) (relying on Comment 3 to find that the secured party may be liable for actions taken by independent contractor with no agency relationship); *Williams v. Republic Recovery Service, Inc.*, No. 09 C 6554, 2010 WL 3732107 at *3-4 (N.D. Ill. Sept. 16, 2010) (same). Thus, Count II stands.

I do agree, however, that this claim may only be brought on behalf of plaintiff Rosalind Smith. Section 9-625(c) provides that persons entitled to recover damages under §9-609 must be "a person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral[.]" 810 ILCS 5/9-625. Because Smith's daughter, Rashai Jackson, is not a debtor or obligor, she cannot recover any damages under §9-609.

Next, plaintiffs allege that AFS was negligent (Count III) or willful and wanton (Count IV) in hiring, supervising, and retaining

3

Equitable as the repossession company. To prove a claim for negligent retention, plaintiffs must prove (1) the employer knew or should have known that the contractor had a particular unfitness for the job so as to create a danger of harm to third parties; (2) such particular unfitness was known or should have been known at the time of the contractor's retention; and (3) this particular unfitness proximately caused the plaintiffs' injuries. *See Van Horne v. Muller*, 705 N.E.2d 989, 904 (Ill. 1998). To support a finding of willful and wanton hiring, supervision and retention, plaintiffs must also show "a deliberate intention to harm or an utter indifference to or conscious disregard for the safety of others[.]" *Bryant v. Livigni*, 619 N.E.2d 550, 560 (Ill. App. Ct. 1993).

AFS seeks dismissal of these two claims, arguing that plaintiffs only provide a "formulaic recitation of the elements" of these two causes of action. I agree. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough to merely allege that AFS knew or should have known that Equitable was likely to breach the peace. Other than merely restating the elements of the claims, plaintiffs provide no allegations concerning Equitable's "particular unfitness for the job" which created a danger of harm to third parties. Plaintiffs do not

4

allege any facts that AFS failed to use reasonable care in selecting Equitable or that AFS knew of past situations where Equitable committed similar wrongful conduct. *See generally Gregor v. Kleiser*, 443 N.E.2d 1162, 1166 (Ill. 1982) (party host could be liable for hiring as a bouncer a man with a "reputation and vicious propensity for physical violence upon others" when that employee assaulted one of the guests). Thus, these claims against AFS are dismissed.

**Equitable's Motion to Dismiss**

Equitable moves to dismiss the FDCPA claim against it. First, it argues that plaintiffs have failed to provide sufficient facts to show that Equitable is a "debt collector" under the Act. Plaintiffs respond by pointing to Section 1692a(6) which states that "[f]or the purpose of section 1692f(6) of this title, ["debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). At this stage, plaintiffs' allegations that Equitable is a "debt collector" for purposes of § 1692a(6) is sufficient.

Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security

5

interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." Plaintiffs allege that defendants "did not have a present right to possession of the vehicle" because Equitable's "attempt to repossess the vehicle "constituted a 'breach of the peace' in violation of 810 ILCS 5/9-609(b)(2)." Am. Compl. ¶27. "In other words, if the debt collector violated the self-help repossession statute, by breach of the peace or otherwise, then the collector had no present right to possession of the property under §1692f(6)." *Fleming-Dudley v. Legal Investigations, Inc.*, No. 05 C 4648, 2007 WL 952026, at *5 (N.D. Ill. Mar. 22, 2007).

The Illinois Commercial Code allows a secured party to use self-help repossession "without judicial process, if it proceeds without breach of the peace." 810 ILCS 5/9-609(b)(2). Under Illinois law, "breach of the peace" as used in the statute "connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173 (Ill. App. Ct. 1996). "Whether a given act provokes a breach of the peace depends upon the accompanying circumstances of each particular case." *Id*. at 1174.

Plaintiffs allege that the vehicle was parked in a driveway at

Rosalind Smith's mother's house. "Unknown Repossession Agents" backed a tow truck up the driveway and "began to hook the vehicle up." Am. Compl. ¶ 11. One of Rosalind's children noticed the agents hooking the vehicle up to the tow truck. Rosalind's mother and children, including Rashai Jackson, ran outside to see what was going on. When Rosalind's mother asked the agents what was going on, they told her they were taking the vehicle for nonpayment of the loan. Then, Rashai Jackson opened the door to the vehicle and got into it. The agents continued to hook the vehicle up to the tow truck and then raised the rear of the vehicle with Rashai still in the vehicle and with the door of the vehicle open. The agents started to tow the vehicle out of the driveway with Rashai still in the vehicle. Rosalind then yelled for the agents to stop towing the vehicle and to put it down because her daughter was in the vehicle. Rosalind then jumped into the vehicle with her daughter. The agents continued to tow the vehicle out of the driveway and into the street. Police officers were called to the scene and told the agents to stop towing the vehicle and the agents complied. Rosalind and Rashai exited the vehicle. The police officers told the agents to return the vehicle to its original place in the driveway. Throughout this incident, Rosalind's mother, children, and individuals from neighboring residences yelled at the agents to stop towing the vehicle away with individuals in the vehicle and the vehicle's doors open.

I conclude that plaintiffs have put forward sufficient allegations concerning a "breach of the peace" to survive a motion to dismiss. While plaintiffs certainly played a role in any breach of the peace, Equitable's employees, despite the fact that plaintiffs jumped into the vehicle, raised the rear of the vehicle and actually towed the vehicle away from the driveway with two individuals in the vehicle and the doors open. All this was done while plaintiffs' family members and neighbors yelled at the agents to stop towing the vehicle. Equitable makes much of the fact that the plaintiffs themselves played a role in any breach by first jumping into the vehicle, but totally fails to address the fact that its own employees continued to tow the vehicle down the street *with the two women in the back*. In addition, they did so with a group of people yelling at them to stop. Finally, the police were called to the scene to restore order.[1] Equitable has put forward no cases like this one where both parties contributed, in part, to the breach of the peace. The language of the statute states that the secured party can repossess secured property so long as the secured party "proceeds without breach of the peace." Nothing in this language suggests that the fault for any breach must lie solely with the party doing the repossessing, and Equitable has

---

[1] This case is distinguishable from the cases cited by Equitable which involved only verbal protests from a debtor. *See Koontz*, 661 N.E.2d at 1173; *Johnson v. Grossinger Motorcorp, Inc.*, 753 N.E.2d 431 (Ill. App. Ct. 2001).

failed to present any authority to the contrary.

Thus, plaintiffs' claim under the FDCPA and Smith's stand-alone claim for a violation of 810 ILCS 5/9-609(b)(2) survive Equitable's motion to dismiss. And, as above, the claim under 810 ILCS 5/9-609(b)(2) is limited to Smith, as Jackson was not a debtor or an obligor.

Turning next to the negligence and willful/wanton claims against Equitable relating to the hiring, training, and supervision of their repossession agents, these claims are dismissed for all the reasons given with respect to plaintiffs' similar claims against AFS. Plaintiffs put forward no facts which would indicate that Equitable knew or should have known that its agents would breach the peace. Further, plaintiffs do not allege any facts that Equitable failed to use reasonable care in selecting its agents or that Equitable knew of past situations where its agents committed similar conduct.

Finally, plaintiffs allege a state law claim of intentional infliction of emotional distress against Equitable. To state a claim for intentional infliction of emotional distress, plaintiff must show that: "(1) defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress." *Naeem v.*

9

*McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006).

"Conduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (internal quotations and citations omitted). The standard for determining whether one's conduct is outrageous is whether an average person in the community would find the conduct outrageous. Restatement (Second) of Torts, § 46, cmt. d, at 73 (1965). The Seventh Circuit has also suggested that the following factors may be considered: whether the defendant had control or power over the plaintiff, whether the defendant reasonably believed its goal was legitimate and whether the defendant was aware that the plaintiff was peculiarly susceptible to emotional distress. *Franciski v. Univ. of Chi. Hospitals*, 338 F.3d 765, 769 (7th Cir. 2003).

While this is a close call, plaintiffs IIED claim survives Equitable's motion to dismiss. The conduct alleged – towing two women down the street with the doors opened – is sufficiently outrageous in nature as to constitute a basis for recovery under intentional infliction of emotional distress. There is no suggestion that the tow truck operators were unaware of the women's presence in the vehicle, and thus the most likely explanation of the agents' behavior is that they intended to severely frighten the women. An average member in the community could certainly think it

10

outrageous for tow truck operators to proceed with a repossession with two individuals in the vehicle. I acknowledge that the two women jumped into the car, likely in an attempt to stop the towing. A reasonable person could conclude, however, that what followed on the part of the towing agents was "extreme in degree." As Equitable points out, the tow truck operators arrived at the scene with the "legitimate" goal of repossessing the vehicle. However, a defendant's "reasonable belief that his objective is legitimate does not provide a defendant carte blanche to pursue that objective by outrageous means." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1998). The tow truck operators obviously exerted control over the plaintiffs in that they controlled the time and location in which plaintiffs could safely exit the vehicle.[2] Given the facts (as alleged by plaintiffs), plaintiffs' claim survives at this stage.

For all of the foregoing reasons, AFS's motion to dismiss [28] is granted in part and denied in part. Likewise, Equitable's motion to dismiss [38] is granted in part and denied in part.

**ENTER ORDER:** Dated 6/1/12

_____
**Elaine E. Bucklo**

---

[2] I note that plaintiffs' allegations, that they suffered "severe emotional distress" and "stress, anxiety, and emotional distress," is sufficient at this stage.